IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff/Respondent, ) | |
| ) | Criminal Case No. CR-20-17-RAW |
| v. ) | |
| ) | Civil Case No. CV-21-275-RAW |
| BRENT ALLEN HAIRE, ) | |
| ) | |
| Defendant/Movant. ) | |

# ORDER

Now before the court is the *pro se* motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence ("§ 2255 motion") filed by Defendant Brent Allen Haire ("Defendant"). [CR Doc. 54; CV Doc. 1]. The Government filed a response in opposition to Defendant's § 2255 motion. [CR Doc. 56]. Defendant filed a reply. [CR Doc. 57].

On July 6, 2020, Defendant pleaded guilty without a plea agreement to Counts One, Two, and Three of the Indictment, more particularly described as follows: Count One, possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B), Count Two, possession of firearm in furtherance of drug trafficking crime in violation of 18 U.S.C. § 924(c), and Count Three, felon in possession of firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). [CR Doc. 31]. A presentence investigation report ("PSR") was prepared by the probation office. The PSR provided the following sequence of events that formed the basis of the charges against Defendant:

> In February 2020, officers with the Muskogee Police Department received information from a confidential source that Brent Haire possessed and distributed multiple-pound quantities of methamphetamine. On February 24, 2020, officers received information that Haire was specifically in possession of multiple ounces of methamphetamine at that time. Haire was believed to be employed in some capacity on the campus of Bacone College, located in Muskogee, Oklahoma. Officers located Haire's vehicle, a white Chevy truck, in the campus parking lot. While conducting surveillance, officers observed Haire walk from a building on the Bacone College campus and get into the driver's side of the truck. The vehicle then left the campus and traveled westbound on Shawnee Bypass in Muskogee.

>Officers, who were in an undercover vehicle, continued surveillance and observed several traffic violations as Haire continued to drive west on Shawnee Bypass and then south on 12th Street. Officers in marked units ultimately initiated a traffic stop at the intersection of 12th and Emporia streets in Muskogee. During the traffic stop, one of the officers deployed his K-9 partner, and an open-air sniff of the vehicle was conducted. The K-9 alerted to the presence of an odor of narcotics emitting from within and around the vehicle.
>
>During a subsequent search of the vehicle, officers recovered from inside the cab a soft case containing a .45 caliber Smith & Wesson Model M&P Shield firearm that was magazine loaded with six rounds of ammunition, a Starr 9mm Model BM firearm that was loaded with seven rounds of ammunition, 76 rounds of 9mm ammunition, 119 rounds of .223 ammunition, and 51 rounds of .45 caliber ammunition. Also located in the cab of the vehicle was a large black bag that contained digital scales with white residue, two syringes (one of which contained a tan-colored liquid), a plastic bag containing multiple smaller plastic bags, a Ziploc bag with a white crystal-like substance and a bundle wrapped in black tape. The black tape was partially torn, and the contents of the bunds appeared to be a similar white crystal-like substance. Under a cupholder area in the vehicle, officers located another plastic bag that contained a white crystal-like substance. In the bed of the truck was a toolbox that was found to contain two empty rifle magazines and a small black pouch with a Lorcin .380 caliber firearm, an empty 9mm caliber magazine and two digital scales with a white residue.

[*PSR* at ¶¶ 8-10]. Based upon a total offense level of 27 and a criminal history category of IV, the guideline imprisonment range was 100 months to 125 months. [*PSR* at ¶ 50]. The PSR further noted that, "[a]s to Count Two, the guideline sentence is the minimum term of imprisonment required by statute, which in this case is 5 years, and shall be served consecutively to any other term of imprisonment. USSG § 2K2.4(b)." *Id*.

Prior to sentencing, counsel for Defendant, Robert S. Williams, Assistant Federal Public Defender, filed a motion for sentencing variance. [CR Doc. 38]. Defendant requested that the court impose a 65-month sentence on Counts One and Three, each to run concurrent with the other, plus the required 60-month consecutive sentence as to Count Two. *Id*. at 3. The Government filed an objection to Defendant's motion for sentencing variance, arguing that that analysis of the factors set forth at 18 U.S.C. § 3553(a) support the imposition of a sentence within the advisory guideline range. [CR Doc. 39 at 4].

Neither party objected to the PSR at the sentencing hearing on October 28, 2020, and the court found the PSR would form the factual basis for sentencing. [CR Doc. 44; CR Doc. 53 at 2]. Defendant's motion for sentencing variance was denied. The undersigned provided the following explanation for denying the motion for sentencing variance:

> In establishing an appropriate sentence for this defendant, the Court has considered the totality of the circumstances regarding the offenses of conviction, including the amount of actual methamphetamine the defendant possessed with the intent to distribute, as well as the two-loaded firearms and one unloaded firearm that the defendant conjointly possessed in furtherance of his drug trafficking crime, in addition to the over 250 rounds of ammunition he possessed at the same time.
>
> The Court has also considered the defendant's personal history and characteristics, including his criminal history and the fact that the defendant was two years into a 20-year suspended sentence for a separate conviction of Possession of Controlled Drug with Intent to Distribute in Muskogee County, Oklahoma, District Court Case CF-2017-18. The Court has fully taken into consideration the combination of these factors, as well as the government's position in this matter.

[CR Doc. 53 at 4-5]. Defendant was sentenced to a term of 100 months on each of Counts One and Three of the Indictment, and 60 months on Count Two of the Indictment. The terms of imprisonment imposed in Counts One and Three were to be served concurrently with one another, and the term of imprisonment imposed in Count Two was to be served consecutively to the term of imprisonment imposed in Counts One and Three. Judgment was entered on October 29, 2020. [CR Doc. 46]. During the sentencing hearing, the court advised Defendant that he had 14 days to appeal his sentence, and that Mr. Williams would remain his attorney during that time. [CR Doc. 53 at 11]. Defendant did not appeal.

Defendant filed a motion for reduction in sentence on November 6, 2023, and in light of Amendment 821, the Government did not oppose the motion. [CR Docs. 58 and 64]. Defendant's motion for reduction in sentence was granted. [CR Doc. 65]. Defendant's sentence was reduced to 87 months on each of Counts One and Three, and all other aspects of the original sentence remained unchanged. The terms of imprisonment imposed in Counts One and Three were to be served concurrently with one another, and the 60-month term of imprisonment imposed in Count Two was to be served consecutively to the term of imprisonment imposed in Counts One and Three.

In his § 2255 motion, Defendant argues in part that the evidence recovered from the search of the truck should have been suppressed. He claims "[t]he traffic stop was not legal," and that "[t]he traffic stop was planned in advance and the D[EA] agents followed [Defendant] for over 5 miles before he committed a minor traffic violation, driving over the yellow line." [CR Doc. 54 at 5]. The Government contends that "Defendant's claims regarding the validity of the search, seizure, and suppression of evidence, are procedurally barred," and that "Defendant defaulted the above claims, having failed to raise them on appeal."[1] [CR Doc. 56 at 6, 9]. The court agrees with the Government.

"A § 2255 motion is not available to test the legality of a matter which should have been raised on direct appeal." *United States v. Cox*, 83 F.3d 336, 341 (10th Cir. 1996) (citing *United States v. Warner*, 23 F.3d 287, 291 (10th Cir. 1994)). "When a defendant fails to raise an issue on direct appeal, he is barred from raising the issue in a § 2255 proceeding, unless he establishes either cause excusing the procedural default and prejudice resulting from the error or a fundamental miscarriage of justice if the claim is not considered." *Id.* Defendant has failed to establish cause and prejudice sufficient to overcome the procedural default rule. Moreover, Defendant has failed to demonstrate actual innocence, meaning he has failed to support a claim for miscarriage of justice.

Defendant also asserts claims relating to ineffective assistance of counsel. Defendant complains that defense counsel did not advise Defendant "of a possible plea agreement which could have reduced his counts of convictions and sentence." [CR Doc. 54 at 4]. He also argues that counsel "did not file a Jackson v. Denno hearing for illegal search and seizure and to show that there was no 'nexus' between the drugs and the firearms." *Id*. In addition, Defendant asserts that counsel "failed to argue that the firearms in question was [sic] used in furtherance of a crime," and "did not file any [m]otions to suppress the evidence or to provide facts that show [Defendant] did not possess the firearms, and that he did not possess the firearms to advance or promote any criminal activity." *Id*. at 5, 7. Defendant's ineffective assistance claims are not procedurally barred and can be reviewed on the merits.

---

[1] The Government concedes that Defendant's § 2255 motion is timely. [CR Doc. 56 at 4].

The Government contends in response that Defendant cannot establish ineffective assistance of counsel. [CR Doc. 56 at 6]. The Government describes Defendant's claims as "conclusory allegations, which are unsupported by either fact or legal authority." *Id*. at 9. The claims, according to the Government, are "insufficient to establish ineffective assistance." *Id*. The Government argues that "[i]nasmuch as Defendant is alleging Mr. Williams was ineffective, his effort is contradicted by the record and is without merit." *Id*. Again, the court agrees with the Government.

The Sixth Amendment gives criminal defendants the right to effective assistance of counsel, and claims of ineffective assistance of counsel are governed by the familiar two-part test announced in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under the *Strickland v. Washington* standard, Defendant must demonstrate that (1) the representation was deficient because it fell below an objective standard of reasonableness under prevailing professional norms; and (2) the deficient performance prejudiced the defense. *Id.*, 466 U.S. at 687. Regarding the first prong, the *Strickland* Court provided the following guidance:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

*Id.* at 689 (internal citation omitted). With respect to the second prong, the Supreme Court explained a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. This court "may address the performance and prejudice components in any order, but need not address both if [Defendant] fails to make a sufficient showing of one." *Foster v. Ward*, 182 F.3d 1177, 1184 (10th Cir. 1999). "Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 599 U.S. 356, 371 (2010). "*Strickland* does not guarantee perfect representation, only a reasonably competent attorney." *Harrington v. Richter*, 562 U.S. 86, 110 (2011) (citations and internal quotation marks omitted).

As noted by the Government, Defendant's allegations are conclusory. The court is "not required to fashion Defendant's arguments for him where his allegations are merely conclusory in nature and without supporting factual averments." *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994). Defendant has not shown that counsel's performance in failing to file a motion to suppress, or failing to argue that the firearms in question were used in furtherance of a crime, was completely unreasonable. In addition, he fails to show that any deficient performance prejudiced his defense.

Defendant speculates that if "[t]he evidence would have been supressed [sic] from the seizure of the illegal search," Defendant would not have been convicted of the § 924(c) count, and Mr. Williams "would have negotiated a plea agreement with less counts and a shorter sentence." [CR Doc. 54 at 7]. There is nothing in the record, however, to suggest there was a possible plea agreement. Nor is there any evidence suggesting a plea would have been offered if there were fewer counts.

Lastly, the court is mindful that counsel filed a motion for sentencing variance with the court. Although the undersigned denied the motion, Defendant was ultimately sentenced at the low-end of the guidelines range. His claims of ineffective assistance of counsel fail both prongs of the *Strickland* standard and must be denied.

A certificate of appealability may issue only if Defendant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). When a district court denies a § 2255 motion on procedural grounds without reaching the merits of a defendant's claims, a certificate of appealability should issue when a defendant "shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a district court denies a § 2255 motion on the merits, a defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* Upon consideration, this court finds that the standard has not been satisfied. This court hereby declines to issue a certificate of appealability.

Defendant's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence [CR Doc. 54; CV Doc. 1] is hereby DENIED.[2]  Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, this court hereby declines to issue a certificate of appealability.

It is so ordered this 22nd day of February, 2024.

_____
THE HONORABLE RONALD A. WHITE
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF OKLAHOMA

---

[2]  The motion, files and records of this case conclusively show that Defendant is entitled to no relief.  Thus, no evidentiary hearing was held.